## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

**GERALD R. QUADE**
32625 Ridgeway Lane
Willoughby, OH 44094

           Plaintiff,

    v.

**NATIONSTAR MORTGAGE LLC**
c/o CSC-Lawyers Incorporating Service
50 W. Broad St., Suite 1800
Columbus, OH 43215

**CALIBER HOME LOANS, INC.**
c/o CT Corporation System
1300 E. 9th St.
Cleveland, OH 44114

**LERNER, SAMPSON & ROTHFUSS, A**
**LEGAL PROFESSIONAL**
**ASSOCIATION**
c/o Richard M. Rothfuss
120 E. 4th St., Eighth Floor
Cincinnati, OH 45202

           Defendants.

**COMPLAINT**

**With Jury Demand**

Now comes Plaintiff, Gerald R. Quade, by and through counsel, and hereby states  for his

Complaint against Defendants Nationstar Mortgage LLC, Caliber Home Loans and Lerner,

Sampson & Rothfuss as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Gerald R. Quade ("Plaintiff" or "Quade") is the owner of residential real

property, located at and commonly known as 32625 Ridgeway Lane, Willoughby, Ohio 44094

(the "Property") which he has occupied as his primary principal residence at all times relevant to this Complaint.

2.      Defendant Nationstar Mortgage LLC ("Nationstar") is the previous servicer of a Note executed by Plaintiff (the "Note") and of a Mortgage on the Property that secures said Note (the "Mortgage") (collectively, the "Loan").

3.      Defendant Nationstar Mortgage LLC ("Nationstar") was the servicer of the Loan from on or before September 10, 2014 through June 28, 2016.

4.      Nationstar serviced the Note and Mortgage (collectively referred to hereinafter as the "Loan") on behalf of the previous and current owners of the Loan.

5.      Defendant Caliber Home Loans, Inc. ("Caliber") is the current servicer of the Loan and has been since the servicing rights of the Loan transferred from Nationstar to Caliber effective as of June 28, 2016. A copy of the "NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS" is attached as *Exhibit 1*.

6.      Caliber services the Loan on behalf of the previous and current owners of the Loan.

7.      Defendant Lerner, Sampson & Rothfuss, a Legal Professional Association ("LSR") is a limited liability company formed and organized in the state of Ohio and whose members practice law in Ohio. At all times relevant, LSR was the attorney for Nationstar and now Caliber on behalf of the previous and current owners of the Loan.

8.      This Court has jurisdiction pursuant to 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, *et seq*. (RESPA). This action is filed to enforce

regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §1024.1, *et seq.* of Regulation X.

9. This action also arises out of defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C 1692, et seq. ("FDCPA").

10. This Court has supplemental jurisdiction to hear any and all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. §1367.

11. Venue lies in this District pursuant to 28 U.S.C. §1391(b), as Plaintiffs reside and the Property is located in Ohio.

## SUMMARY OF CLAIMS

12. Plaintiff restates and incorporates all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

13. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

14. Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) and TILA (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (February 14, 2013) and 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

15. The Loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. §1024.2(b).

16.     Nationstar is subject to the aforesaid regulations and does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. §1026.41(e)(4), nor the exemption for a "qualified lender", as such term is defined in 12 C.F.R. §617.700.

17.     Caliber is subject to the aforesaid regulations and does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. §1026.41(e)(4), nor the exemption for a "qualified lender", as such term is defined in 12 C.F.R. §617.700.

18.     Plaintiff asserts a claim for relief against Nationstar for breaches of the specific rules under Regulation X as set forth, *infra*.

19.     Plaintiff asserts a claim for relief against Caliber for breaches of the specific rules under Regulation X as set forth, *infra*.

20.     Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. §2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

21.     Congress enacted the FDCPA to prohibit the "Use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C §1692a.

22.     Caliber is a debt collector, Plaintiff is a consumer and the Loan is a debt within the meaning of the FDCPA.  Plaintiff asserts a private right of action under the FDCPA pursuant to 15 U.S.C. §1692k for LSR's conduct in connection with collection of the Loan and he is entitled to recover actual damages, statutory damages, costs and attorneys' fees.

23.     LSR is a debt collector, Plaintiff is a consumer and the Loan is a debt within the meaning of the FDCPA.  Plaintiff asserts a private right of action under the FDCPA pursuant to

15 U.S.C. §1692k for LSR's conduct in connection with collection of the Loan and he is entitled to recover actual damages, statutory damages, costs and attorneys' fees.

## BACKGROUND

24.     On or about June 10, 2011, foreclosure proceedings were initiated against Plaintiff in the case now captioned or otherwise titled *Bank of America, N.A.  v. Gerald R. Quade*, et. al., in the Court of Common Pleas for Lake County, Ohio and assigned Case Number 11-CF-001444 (the "Foreclosure").  A copy of the docket in the Foreclosure obtained from the website for the Lake County Clerk of Courts is attached as *Exhibit 2*.

25.     On or about May 28, 2014, the court entered judgment and a decree of foreclosure in the Foreclosure against Plaintiff.

26.     On or about October 3, 2014, Nationstar, by and through LSR, filed a *Praecipe for Order of Sale* in the Foreclosure.  See *Exhibit 2*.

27.     On or around October 7, 2014, Plaintiff submitted a loss mitigation application to Nationstar in order to be reviewed for any and all loss mitigation opportunities available.  A copy of the fax cover page from this loan modification application is attached as *Exhibit 3*.

28.     On or about November 12, 2014, Attorney Marc E. Dann and The Dann Law Firm Co., L.P.A. ("DLF") filed their notice of  appearance as counsel on behalf of Quade and his wife Jane Quade  in the Foreclosure.  See *Exhibit 2*.

29.     On or about November 25, 2014, Nationstar sent correspondence to Plaintiff alleging  that Plaintiff was declined for a loan modification because the loss mitigation application Plaintiff submitted was not complete (the "2014 Denial"). A copy of the 2014 Denial is attached as *Exhibit 4*.

30.     On or about December 9, 2014, an entry was filed in the Foreclosure withdrawing the Property from sheriff's sale. See *Exhibit 2*.

31.     On or about December 18, 2014, Nationstar sent correspondence to Quade, by and through DLF, confirming that Quade's loss mitigation application was denied on or about November 25, 2014, as Nationstar had no record of receiving additional documents necessary to complete such application which had previously been requested (the "December 2014 Letter"). A copy of the December 2014 Letter, as received without the first page by DLF, is attached as *Exhibit 5*.

32.     The December 2014 Letter further alleged that in order to proceed with the loss mitigation process, Plaintiff was required to submit additional documentation to "re-initiate the review for mortgage assistance" and that "[u]pon receipt of a complete package, Nationstar will review the account for all programs available.  See *Exhibit 5*.

33.     On or about January 20, 2015, Plaintiff, by and through Whitney Horton of DLF, submitted the documents requested by and through the December 2014 Letter.  A copy of such correspondence is attached as *Exhibit 6*; see also, *Exhibit 5*.

34.     On or about January 22, 2015, Nationstar, by and through LSR, filed a *Precipe for Alias Order of Sale* in the Foreclosure, and an *Order of Sale* was issued on or about January 23, 2015.  See *Exhibit 2*.

35.     On or about January 24, 2015, Nationstar sent correspondence acknowledging receipt of Plaintiff's additional loss mitigation documents and stating that the following documents were "missing or incomplete":

> Documentation for all sources of income
> IRS 4506T or 4506-T EZ

RMA (Request for Modification and Affidavit Form) Or UBAF
(Uniform Borrower Assistance Form)

A copy of the January 24, 2015 correspondence is attached as *Exhibit 7*.

36.     Due to the insurmountable vagueness of the requested documents requested in the January 24, 2015 correspondence, Ms. Horton sent e-mail correspondence to Attorney Jennifer Schaeffer of LSR seeking clarification as to what documentation was needed to complete the loss mitigation application. A copy of this e-mail correspondence is attached as *Exhibit 8*.

37.     Plaintiff received further clarification from Attorney Schaeffer of LSR on or about February 26, 2015, as to what documentation was required to complete Plaintiff's loss mitigation application.

38.     On or about March 4, 2015, an entry was filed in the Foreclosure withdrawing the Property from sheriff's sale.  See *Exhibit 2*.

39.     On or about March 10, 2015, Plaintiff supplied all missing, corrective, or supplemental documents requested by Nationstar and Attorney Schaeffer of LSR.  A copy of that correspondence is attached as *Exhibit 9*.

40.     On or about March 10, 2015, Plaintiff, by and through DLF, received correspondence from Nationstar dated February 27, 2015, stating that Plaintiff was required to submit a "[c]urrent lease agreement for rental income" and "Schedule E" in order to complete the loss mitigation application and that such documentation had to be submitted "**no later than 3/29/2015**" (emphasis in original).  A copy of such correspondence is attached as *Exhibit 10*.

41.     On or about March 18, 2015, Plaintiff, through counsel, submitted the documentation requested in the February 27, 2015 correspondence to Nationstar.  A copy of such correspondence is attached as *Exhibit 11*.

7

42.     At no point in time after March 18, 2015, did Plaintiff receive any request for any supplemental, corrective, or missing documentation that had not previously been provided in relation to Plaintiff's loss mitigation application.

43.     Despite Quade  promptly and fully complying with all of Nationstar's requests for supplemental, missing, or corrective documentation in relation to the loss mitigation application, on or about April 4, 2015, Nationstar sent correspondence to Quade advising  that his loss mitigation application was being denied because the alleged, incorrectly that the loss mitigation application was incomplete and that Plaintiff failed to submit all of the requested documentation (the "April 2015 Denial").  A copy of the April 2015 Denial is attached as *Exhibit 12*.

44.     On or about May 5, 2015, Plaintiff, by and through DLF, sent correspondence captioned "Notice of Error under 12 C.F.R. §1024.35(b)(11) for Improper Denial of Loss Mitigation Options; Notice of Error under 12 C.F.R. §1024.35(b)(11) for Failure to Notify the Borrower of their Right to Appeal the Loss Mitigation Evaluation Determination in Violation of 12 C.F.R. §1024.41(c)(1)(ii)" ("NOE #1") via Certified U.S. Mail [Receipt No. 7014 2870 0000 6446 3237].  A copy of NOE #1 is attached as *Exhibit 13*.

45.     Plaintiff sent NOE #1 to the address Nationstar designated for the receipt of notices of error pursuant to 12 C.F.R. §1024.35(c). See *Exhibit 13*.

46.     Nationstar received NOE #1 on or about May 13, 2015. A copy of the Tracking Information for NOE #1, obtained from the USPS's website (www.usps.com), is attached as *Exhibit 14.*

47.     Plaintiff, by and through NOE #1, alleged that Nationstar committed at least two (2) clear distinct and separate errors pursuant to 12 C.F.R. § 1024.35(b)(11): (1) An error under

12 C.F.R. § 1024.35(b)(11) for improperly denying, or otherwise failing to review, Plaintiff's loss mitigation application; and, (2) an error under 12 C.F.R. § 1024.35(b)(11) for failing to notify the Borrower of his right to appeal the loss mitigation evaluation determination contained in the April 2015 Denial in violation of 12 C.F.R. § 1024.41(c)(1)(ii).  See *Exhibit 13*.

48.     On or about May 13, 2015, Nationstar sent correspondence to Plaintiff acknowledging receipt NOE #1. A copy of such correspondence is attached as *Exhibit 15*.

49.     On or about June 2, 2015, Nationstar sent correspondence to Plaintiff in response to NOE #1 (the "Response to NOE #1").  A copy of the Response to NOE #1 is attached as *Exhibit 16*.

50.     The Response to NOE #1 failed to address the two (2) clear distinct and separate errors alleged by and through NOE #1 and merely stated "your appeal of the original decision, that no loss mitigation retention option would be offered with respect to your recent application, was not received within the allowable timeframe for appeal".  See *Exhibit 16*.

51.     Nationstar did not send, nor did Plaintiff receive, any further correspondence in response to NOE #1 because the acknowledgment letter dated May 13, 2015 and the Response to NOE #1. See *Exhibit 15*; *Exhibit 16*.

52.     As Nationstar, failed to evaluate Plaintiff's complete loss mitigation application, despite receiving  NOE #1 which notified Nationstar of its error and obligations pursuant to Regulation X, Plaintiff submitted another loss mitigation application, by and through DLF, on or about November 25, 2015 (the "Continued Application"). A copy of such correspondence is attached as *Exhibit 17*.

53.    On or about December 1, 2015, Nationstar sent correspondence to Plaintiff acknowledging receipt of the Continued Application and stating that Plaintiff had to submit "Schedule 1065" and a complete profit and loss statement on or before "12/31/2015".  A copy of such correspondence is attached as *Exhibit 18*.

54.    On or about December 30, 2015, Plaintiff submitted any and all documents requested by and through the December 1, 2015 correspondence.  A copy of the December 30, 2015 correspondence is attached as *Exhibit 19*.

55.    Despite Plaintiff already submitting all documents requested by and through Nationstar in order to complete the Second Application, Nationstar began to request duplicative documents and request updated documents for documents that would not have become "stale" or otherwise outdated, but for Nationstar's failure to exercise reasonable diligence in obtaining the necessary documents in order to complete the Continued Application.

56.    For example, on or about January 6, 2016, Nationstar sent correspondence stating that Plaintiff was required to send a "Schedule K-1", despite the fact that this particular document had already been provided to Nationstar. A copy of the January 6, 2016 correspondence is attached as *Exhibit 20*.

57.    As evident by and through the January 6, 2016, since Nationstar failed to acknowledge that the Second Application was complete as of December 30, 2015, Nationstar began to claim that other documents were becoming stale and would need to be "refreshed" or updated. See *Exhibit 20*.

58.    On or about February 1, 2016, Plaintiff re-submitted the Schedule K-1 documents that had already been provided to Nationstar and also submitted other updated documents

including an updated payment worksheet, an updated Request for Modification and Affidavit Form, an updated 4506-T form, and updated pay stubs.  A copy of such correspondence is attached as *Exhibit 21*.

59.    Nationstar waited nearly three (3) weeks until February 18, 2016, to inform Plaintiff that Plaintiff need to answer a question as to the profit and loss statements Plaintiff provided and to contact Nationstar to resolve.  A copy of the February 18, 2016 correspondence is attached as *Exhibit 22*.

60.    Plaintiff, in an attempt to resolve Nationstar's concerns about the profit and loss statements for the Continued Application, submitted updated profit and loss statements on March 11, 2016.  A copy of such correspondence is attached as *Exhibit 23.*

61.    Then, on or about March 16, 2016, nearly forty-five (45) days after having submitted updated pay stubs, Nationstar sent correspondence to Plaintiff indicating that Nationstar had a question as to Plaintiff's paystubs and to call Nationstar to resolve.  No explanation was provided as to why the questions as to Plaintiff's paystubs could not have been addressed at the time Plaintiff was already in contact with Nationstar as to the profit and loss statements.  A copy of the March 16, 2016 correspondence is attached as *Exhibit 24*.

62.    On or about April 15, 2016, Charity Howell, a Dedicated Loan Specialist for Nationstar, informed Ms. Horton of DLF that they needed a statement as to how often Quade receives commission compensation from their employer, but that nothing else was needed in regards to the Continued Application.

63.    Plaintiff submitted a letter of explanation to Nationstar as to their commission income on or about April 18, 2016.  A copy of such correspondence is attached as *Exhibit 25*.

64.     On or about April 21, 2016, Nationstar sent correspondence to Plaintiff requesting updated profit and loss statements despite the fact that updated profit and loss statements were previously provided on March 11, 2016.   A copy of the April 21, 2016 correspondence is attached as *Exhibit 26*; see *Exhibit 23*.

65.     On or about May 13, 2016, Plaintiff sent updated profit and loss statements to Nationstar, as requested by and through the correspondence dated, April 21, 2016.

66.     On or about May 20, 2016, Nationstar requested that Plaintiff submit a "letter of explanation clarifying the information [Plaintiff] provided" on their "Schedule K-1" roughly five (5) months after Plaintiff first submitted their "Schedule K-1" for the first time and roughly three (3) months after Plaintiff submitted their "Schedule K-1" for the second time.  No explanation was provided as to why it took Nationstar three (3) to five (5) months to review the "Schedule K-1" and determine that a letter of explanation was required.   A copy of the May 20, 2016 correspondence is attached as *Exhibit 27*.

67.     On or about June 17, 2016, Plaintiff provided sufficient documentation to satisfy Nationstar's concern with Plaintiff's "Schedule K-1".   A copy of such correspondence is attached as *Exhibit 28*.

68.     On or about June 15, 2016, however, Nationstar sent correspondence requesting that the borrower submit, once again, updated paystubs, as well as an updated "Request for Modification and Affidavit Form claiming that the information provided has "exceeded [Nationstar's] allowable timeframe" despite the fact that the same correspondence indicates that such information would not expire until July 26, 2016. A copy of such correspondence is attached as *Exhibit 29*.

69.     On or about June 28, 2016, with Nationstar still not having reviewed the Continued Application despite Quade's persistent  responses to Nationstar's duplicative, vague, and untimely requests for missing, supplemental, and corrective information, Nationstar transferred servicing rights to the Loan to Caliber, sealing the certainty that Nationstar would never perform an evaluation of the Continued Application.

70.     On or about July 11, 2016, Plaintiff, by and through Ms. Horton of DLF, sent a loss mitigation application, along with all supplemental information previously requested by Nationstar, to Caliber by and through e-mail correspondence and facsimile transmission (the "Caliber Application"). A copy of such correspondence is attached as *Exhibit 30*.

71.     Plaintiff, by and through Ms. Horton of DLF, copied LSR to the July 11, 2016 correspondence containing the Caliber Application by sending the Caliber Application via e-mail correspondence  to  Attorney  Schaeffer  at  jennifer.schaeffer@lsrlaw.com  and attyemail@lsrlaw.com. See  *Exhibit 30*.

72.     On or about August 10, 2016, Caliber sent two (2) pieces of correspondence seeking additional information necessary to complete the Caliber Application.  A copy of such correspondence is attached as *Exhibit 31*.

73.     On or about August 10, 2016, Plaintiff, by and through DLF, submitted all of the information and documentation requested by and through Caliber's correspondence dated August 10, 2016 via facsimile transmission.  A copy of such correspondence is attached as *Exhibit 32*.

74.     Plaintiff, by and through Ms. Horton of DLF, copied LSR to the August 10, 2016 correspondence containing the supplemental information for the Caliber Application requested by  and  through  the  August  10,  2016  correspondence,  by  sending  such  information  and

documentation     via     e-mail     correspondence     to     Attorney     Schaeffer     at

jennifer.schaeffer@lsrlaw.com and attyemail@lsrlaw.com. See *Exhibit 32*.

75.     At no point in time since August 10, 2016, has Caliber sent, nor Plaintiff received,

any further correspondence concerning the Caliber Application.

76.     Despite  Plaintiff  having  submitted  any  and  all  information  and  documents

requested by Caliber to constitute a complete loss mitigation application, and despite LSR having

full notice and knowledge of the Caliber Application, on or about August 29, 2016, Caliber, by

and through LSR, filed a *Precipe for Pluries Order of Sale*.  See *Exhibit 2*; *Exhibit 30*; *Exhibit*

*32*.

77.     Pursuant to the *Precipe for Pluries Order of Sale* filed on August 29, 2016, a

foreclosure sale of the Property has been scheduled for November 21, 2016.

78.     In  an  attempt  to  prevent  the  foreclosure  sale  of  the  Property  and  by  putting

Caliber  on  notice  of  their  error  in  moving  for  an  order  of  sale  for  the  Property,  on  or  about

September 26, 2016, Plaintiff, by and through DLF, sent correspondence to Caliber, as well as

LSR,  captioned  "Notice  of  error  pursuant  to  12  C.F.R.  §  1024.35(b)(11)  for  violation  of  12

C.F.R.  §  1024.41(c)"  ("NOE  #2")  via  Certified  U.S.  Mail  [Receipt  No.  7016  0340  0000  9159

7460].  A copy of NOE #2 is attached as *Exhibit 33*.

79.     Plaintiff sent NOE #2 to the address Caliber designated for the receipt of notices

of error pursuant to 12 C.F.R. §1024.35(c). See *Exhibit 33*.

80.     Caliber received NOE #2 on or about October 3, 2016. A copy of the Tracking

Information  for  NOE  #2,  obtained  from  the  USPS's  website  (www.usps.com),  is  attached  as

*Exhibit 34.*

81.     On or about October 4, 2016 Caliber sent correspondence to Plaintiff acknowledging receipt of NOE #1, but has yet to respond to NOE #2 or withdraw the Property from sheriff's sale. A copy of such correspondence is attached as *Exhibit 35*.

82.     The actions of Nationstar, Caliber, and LSR, in their respective handling of the loss mitigation process, specifically including such actions as in failing to exercise diligence to complete loss mitigation applications, failing to timely review applications, and moving for scheduling foreclosure sales with loss mitigation applications pending review, have caused Plaintiff to incur legal expenses and other pecuniary damages damages by being forced to seek help to attempt to ensure that Quade's loss mitigation application would be reviewed , a right to which he is  entitled pursuant to Regulation X to RESPA and to prevent the unjust sale of his family's home, and, once Plaintiff had exercised all reasonable options at his disposal, the filing of the instant proceedings.

83.     The actions of Nationstar, Caliber, and LSR have caused the loss mitigation process to last for a significant period longer than it would have had they acted properly.

84.     As such, the actions of Nationstar, Caliber, and LSR have caused Plaintiff to remain in a default status on his loan for a significantly longer period of time than Quade  would have had they not acted inappropriately which has caused Plaintiff to suffer actual damages including, but not limited to continued damage to his credit, having been denied for credit and forced to pay higher prices for insurance and a delay in the rehabilitation of his credit.

85.     Throughout this entire ordeal, Plaintiff has merely wanted to have his servicer review the loss mitigation application in a timely manner, something to which Plaintiff is entitled under federal law, so that Plaintiff could obtain a loan modification, get out of default on the

Loan, resume making timely, proper payments on the Loan to Caliber and any subsequent servicer, begin to rehabilitate his credit, and most importantly, allow his family to remain in their Home .

86.      Through this entire period Quade was suffering from and recovering from Oral-Pharyngeal Cancer. The stress and fear of not knowing whether or not he and his family would be able to remain their family home caused his recovery to be more painful and difficult. Further the Quades have an adopted daughter who suffers from reactive attachment disorder making the possibility of moving from the home that she has lived in since she was 7 years old (the Quades were her 4th and final adoption placement) a risk significant psychological event. Further, the wrongful and willful actions of Nationstar, Caliber, and LSR have caused Plaintiff to suffer great emotional distress driven by the fear that he might lose and be forced to leave his Home which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

87.      At the time of the filing of this Complaint, Nationstar has had more than Six Thousand Eight Hundred Ten (6,810) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaintdatabase/).

88.      At the time of the filing of this Complaint, Caliber has had more than One Thousand Twenty-Five (1,025) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan

modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaintdatabase/).

## COUNT ONE: AGAINST NATIONSTAR

**(Violation of 12 C.F.R. § 1024.41(c) for failure to perform a review of a borrower's eligibility for any and all loss mitigation options available to a borrower within thirty (30) days of receipt of a complete loss mitigation application)**

89.     Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 88 in their entirety, as if fully rewritten.

90.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))"

91.     12 C.F.R. § 1024.41(c)(1) provides that if a servicer receives a complete loss mitigation application more than thirty-seven (37) days prior to a foreclosure sale, then, within thirty (30) days of receiving the complete loss mitigation application, the servicer *must*: (i) Evaluate the borrower for any and all loss mitigation options available to the borrower; and, (ii) provide written notice to the borrower "stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage."

92.     Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(b)(3) provides that "[i]f no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale."

93.     On or about January 20, 2015, Plaintiff, by and through Whitney Horton of DLF, submitted the documents requested by and through the December 2014 Letter.  See *Exhibit 5*; *Exhibit 6*.

94.     On or about January 22, 2015, Nationstar, by and through LSR, filed a *Precipe for Alias Order of Sale* in the Foreclosure, and an *Order of Sale* was issued on or about January 23, 2015.  See *Exhibit 2*.

95.     On or about January 24, 2015, Nationstar sent correspondence acknowledging receipt of Plaintiff's additional loss mitigation documents and stating that the following documents were "missing or incomplete":

> Documentation for all sources of income
> IRS 4506T or 4506-T EZ
> RMA (Request for Modification and Affidavit Form) Or UBAF
> (Uniform Borrower Assistance Form)

A copy of the January 24, 2015 correspondence is attached as *Exhibit 7*.

96.     Due to the utter vagueness of the requested documents per the January 24, 2015 correspondence, Ms. Horton sent e-mail correspondence to Attorney Jennifer Schaeffer of LSR seeking clarification as to what documentation was needed to complete the loss mitigation application. A copy of this e-mail correspondence is attached as *Exhibit 8*.

97.     Plaintiff received further clarification from Attorney Schaeffer of LSR on or about February 26, 2015, as to what documentation was required to complete Plaintiff's loss mitigation application.

98.     On or about March 4, 2015, an entry was filed in the Foreclosure withdrawing the Property from sheriff's sale.  See *Exhibit 2*.

99.    On or about March 10, 2015, Plaintiff supplied any and all missing, corrective, or supplemental documents requested by Nationstar and Attorney Schaeffer of LSR.  See *Exhibit 9*.

100.    On or about March 10, 2015, Plaintiff, by and through DLF, received correspondence from Nationstar dated February 27, 2015, stating that Plaintiff was required to submit a "[c]urrent lease agreement for rental income" and "Schedule E" in order to complete the loss mitigation application and that such documentation had to be submitted "**no later than 3/29/2015**" (emphasis in original).  See *Exhibit 10*.

101.    On or about March 18, 2015, Plaintiff, by and through DLF, submitted the documentation requested by and though the February 27, 2015 correspondence to Nationstar. See *Exhibit 11*.

102.    At no point in time after March 18, 2015, did Plaintiff receive any request for any supplemental, corrective, or missing documentation that had not previously been provided in relation to Plaintiff's loss mitigation application.

103.    As of March 18, 2015, Plaintiff had submitted any and all documentation requested by Nationstar and LSR in order to constitute a complete loss mitigation application.

104.    Nationstar was in possession of a complete loss mitigation application as of March 18, 2015.

105.    There was no foreclosure sale of the Property scheduled as of March 18, 2015.

106.    As such, pursuant to 12 C.F.R. § 1024.41(c)(1), Nationstar was required, within thirty (30) days of March 18, 2015, to: (i) Evaluate Plaintiff's loss mitigation application for any and all loss mitigation options available to Plaintiff; and, (ii) provide written notice to Plaintiff

"stating [Nationstar's] determination of which loss mitigation options, if any, it will offer to [Plaintiff] on behalf of the owner or assignee of the mortgage."

107.    Rather than evaluate Plaintiff's loss mitigation application for any and all loss mitigation options available to Plaintiff, on or about April 4, 2015 Nationstar issued a perfunctory denial of Plaintiff's loss mitigation application which incorrectly and inappropriately claimed that Plaintiff had not submitted any and all documents necessary to complete the application despite the fact that Plaintiff fully complied with any and all of Nationstar's requests for supplemental, missing, or corrective documentation in relation to such application. See *Exhibit 12*.

108.    As the April 2015 Denial clearly and inappropriate stated that Plaintiff's loss mitigation application was incomplete, it is clear that Nationstar did not evaluate Plaintiff's loss mitigation application for any and all loss mitigation options available to Plaintiff.

109.    Nationstar's failure to review Plaintiff's complete loss mitigation application within thirty (30) days of receipt constitute a clear, separate, and distinct violation of 12 C.F.R. §1024.41(c).

110.    Nationstar's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

111.    As a result of Nationstar's actions, Nationstar is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT TWO: AGAINST NATIONSTAR

### [Violation of 12 C.F.R. §1024.41(c)(1)(ii) for failure to notify a borrower of their right to appeal a loss mitigation determination]

112.    Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 88 in their entirety, as if fully rewritten.

113.    12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))"

114.    12 C.F.R. § 1024.41(c)(1) provides that if a servicer receives a complete loss mitigation application more than thirty-seven (37) days prior to a foreclosure sale, then, within thirty (30) days of receiving the complete loss mitigation application, the servicer *must*: (i) Evaluate the borrower for any and all loss mitigation options available to the borrower; and, (ii) provide written notice to the borrower "stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage."

115.    12 C.F.R. § 1024.41(c)(1) provides that  in the notice required by 12 C.F.R. § 1024.41(c)(1), a servicer, should notify the borrower that they have "the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section", if applicable.

116.    Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(b)(3) provides that "[i]f no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale."

117.    Nationstar intended for the April 2014 Denial to constitute the required notice pursuant to 12 C.F.R. § 1024.41(c)(1) regarding the loss mitigation application Plaintiff submitted. See *Exhibit 12*.

118.    The April 2014 Denial did not contain any statement advising Plaintiff of his right to appeal the denial of Plaintiff's loss mitigation application contained in the April 2014 Denial.

119.    Nationstar's failure to advise Plaintiff of their right to appeal the denial of Plaintiff's loss mitigation application contained in the April 2015 Denial constitutes a clear, separate, and distinct violation of the express requirements of 12 C.F.R. §1024.41(c)(1)(ii).

120.    Nationstar's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

121.    As a result of Nationstar's actions, Nationstar is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT THREE: AGAINST NATIONSTAR

### [Violation of 12 C.F.R. §1024.35 for failure to properly respond to NOE #1]

122.    Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 88 in their entirety, as if fully rewritten.

123.    12 C.F.R. §1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

124.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. §1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

125.    12 C.F.R. §1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

126.    On or about May 5, 2015, Plaintiff, by and through DLF, sent NOE #1 to Nationstar via Certified U.S. Mail [Receipt No. 7014 2870 0000 6446 3237]. See *Exhibit 13*.

127.    NOE #1 met the definition of a notice of error for the purposes of 12 C.F.R. §1024.35 pursuant to 12 C.F.R. §1024.35(a). See *Exhibit 13*.

128.    Plaintiff sent NOE #1 to the address Nationstar designated for the receipt of notices of error pursuant to 12 C.F.R. §1024.35(c). See *Exhibit 13*.

129.    Plaintiff, by and through NOE #1, alleged that Nationstar committed at least two (2) clear distinct and separate errors pursuant to 12 C.F.R. § 1024.35(b)(11): (1) An error under 12 C.F.R. § 1024.35(b)(11) for improperly denying, or otherwise failing to review, Plaintiff's loss mitigation application; and, (2) an error under 12 C.F.R. § 1024.35(b)(11) for failing to notify the

23

Borrower of their right to appeal the the loss mitigation evaluation determination contained in the April 2015 Denial in violation of 12 C.F.R. § 1024.41(c)(1)(ii).  See *Exhibit 13*.

130.    Nationstar received NOE #1 on or about May 13, 2015. See *Exhibit 14*.

131.    On or about June 2, 2015, Nationstar sent the Response to NOE #1 to Plaintiff. See *Exhibit 16*.

132.    Response to NOE #1 was insufficient to comply with 12 C.F.R. §1024.35(e)(1)(i)(A) because at no point did it state that Nationstar had "[c]orrect[ed] the error or errors identified by the borrower and provid[ed] the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance." See *Exhibit 16*.

133.    Response to NOE #1 was insufficient to comply with 12 C.F.R. §1024.35(e)(1)(i)(B) because at no point did it state that Nationstar determined that no error occurred. See *Exhibit 16*.

134.    Further, it is clear that Nationstar failed to perform a reasonable investigation into the alleged errors because had such a reasonable investigation been performed it would have been unmistakably apparent that: (1) as of March 18, 2015, Nationstar was in receipt of any and all documents requested or otherwise required by Nationstar in order to constitute a complete loss mitigation application for Plaintiff so it was an error to claim that Plaintiff failed to submit a complete loss mitigation application; and, (2) that the April 2015 Denial did not contain any statement advising the Borrower of their right to appeal the April 2015 Denial as is required pursuant to 12 C.F.R. § 1024.41(c)(1)(ii).

135.    In fact, at no point in the Response to NOE #1 did Nationstar directly address the two (2) clear distinct and separate errors alleged by and through NOE #1, instead merely stating that "your appeal of the original decision, that no loss mitigation retention option would be offered with respect to your recent application, was not received within the allowable timeframe for appeal". See *Exhibit 16*.

136.    As such it is clear that Nationstar failed to conduct a reasonable investigation in the errors alleged by and through NOE #1.

137.    Nationstar's actions, in provide a proper response to NOE #1 in compliance with the express requirements of 12 C.F.R. §1024.25(e)(1), constitute a willful, clear, and material violation of 12 C.F.R. §1024.35(e).

138.    Nationstar's actions are believed to be a pattern and practice of behavior in conscious disregard for the Plaintiff's rights

139.    As a result, Nationstar is liable to Plaintiff for actual damages, as described, *supra*, as well as for statutory damages, costs, and attorneys' fees.

## COUNT FOUR: AGAINST NATIONSTAR

**(Violation of 12 C.F.R. § 1024.41(b) for failure to exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application)**

140.    Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 88 in their entirety, as if fully rewritten.

141.    12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))"

142.    12 C.F.R. § 1024.41(b) provides that "a servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

143. The CFPB's Official Interpretation of 12 C.F.R. § 1024.41(b)(2)(i)(B) provides that:

> Even if a servicer has informed a borrower that an application is complete (or notified the borrower of specific information necessary to complete an incomplete application), if the servicer determines, in the course of evaluating the loss mitigation application submitted by the borrower, that additional information or a corrected version of a previously submitted document is required, the servicer must promptly request the additional information or corrected document from the borrower pursuant to the reasonable diligence obligation in § 1024.41(b)(1). See § 1024.41(c)(2)(iv) addressing facially complete applications.

144. Moreover, 12 C.F.R. § 1024.41(c)(2)(iv) provides, in part, that: "[i]f the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application."

145. Nationstar failed to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete Plaintiff's loss mitigation applications, specifically, the Second Application.

146. Despite Plaintiff already having submitted all documents requested by and through Nationstar in order to complete the Second Application as of December 30, 2015, Nationstar began to request duplicative documents and request updated documents for documents that would not have become "stale" or otherwise outdated, but for Nationstar's failure to exercise reasonable diligence in obtaining the necessary documents in order to complete the Second Application. See *Exhibit 17*; *Exhibit 18*; *Exhibit 19*.

26

147.    For example, on or about January 6, 2016, Nationstar sent correspondence stating that Plaintiff was required to send a "Schedule K-1", but this document had already been provided to Nationstar.  See *Exhibit 20*.

148.    As evident by and through the January 6, 2016, since Nationstar failed to acknowledge that the Second Application was complete as of December 30, 2015, Nationstar began to claim that other documents were becoming stale and would need to be "refreshed" or updated. See *Exhibit 20*.

149.    On or about February 1, 2016, Plaintiff re-submitted the Schedule K-1 documents that had already been provided to Nationstar and also submitted other updated documents including an updated payment worksheet, an updated Request for Modification and Affidavit Form, an updated 4506-T form, and updated pay stubs.  See *Exhibit 21*.

150.    Nationstar waited nearly three (3) weeks until February 18, 2016, to inform Plaintiff that Plaintiff need to answer a question as to the profit and loss statements Plaintiff provided and to contact Nationstar to resolve. Se *Exhibit 22*.

151.    Plaintiff, in an attempt to resolve Nationstar's concerns about the profit and loss statements for the Second Application, submitted updated profit and loss statements on March 11, 2016. See *Exhibit 23*.

152.    Then, on or about March 16, 2016, nearly forty-five (45) days after having submitted updated pay stubs, Nationstar sent correspondence to Plaintiff indicating that Nationstar had a question as to Plaintiff's paystubs and to call Nationstar to resolve.  No explanation was provided as to why the questions as to Plaintiff's paystubs could not have been

addressed at the time Plaintiff was already in contact with Nationstar as to the profit and loss statements.  See *Exhibit 24*.

153.    On or about April 15, 2016, Charity Howell, a Dedicated Loan Specialist for Nationstar, informed Ms. Horton of DLF that they needed a statement as to how often Plaintiff receives commission compensation from his employer, but that nothing else was needed in regards to the Second Application.

154.    Plaintiff submitted a letter of explanation to Nationstar as to his commission income on or about April 18, 2016.  See *Exhibit 25*.

155.    On or about April 21, 2016, Nationstar sent correspondence to Plaintiff requesting updated profit and loss statements despite the fact that updated profit and loss statements were previously provided on March 11, 2016.  See *Exhibit 23*; *Exhibit 26*.

156.    On or about May 13, 2016, Plaintiff sent updated profit and loss statements to Nationstar, as requested by and through the correspondence dated, April 21, 2016.

157.    On or about May 20, 2016, Nationstar requested that Plaintiff submit a "letter of explanation clarifying the information [Plaintiff] provided" on his "Schedule K-1" roughly five (5) months after Plaintiff first submitted his "Schedule K-1" for the first time and roughly three (3) months after Plaintiff submitted his "Schedule K-1" for the second time.  No explanation was provided as to why it took Nationstar three (3) to five (5) months to review the "Schedule K-1" and determine that a letter of explanation was required.  See *Exhibit 27*.

158.    On or about June 17, 2016, Plaintiff provided sufficient documentation to satisfy Nationstar's concern with Plaintiff's "Schedule K-1".  See *Exhibit 28*.

159.    On or about June 15, 2016, however, Nationstar sent correspondence requesting that the borrower submit, once again, updated paystubs, as well as an updated "Request for Modification and Affidavit Form claiming that the information provided has "exceeded [Nationstar's] allowable timeframe" despite the fact that the same correspondence indicates that such information would not expire until July 26, 2016. See *Exhibit 29*.

160.    On or about June 28, 2016, with Nationstar still not having reviewed the Second Application despite Plaintiff consistently responding to Nationstar's duplicative, vague, and untimely requests for missing, supplemental, and corrective information, Nationstar transferred servicing rights to the Loan to Caliber, sealing the certainty that Nationstar would not perform an evaluation of the Second Application.

161.    At numerous points in time from December 30, 2015 through June 28, 2016, Nationstar would fail to act diligently in obtaining the necessary information to complete the Second Application by requesting individual pieces of information rather than all of the information that was required.  For example, if Nationstar needed clarifying information as to the "Schedule K-1" and Plaintiff's commission income on Plaintiff's paystubs, there is no reason as to why both pieces of information could not have been requested simultaneously rather than two (2) months apart when Nationstar was in possession of both the "Schedule K-1" and the paystubs at the time Nationstar requested supplemental information as to the paystubs.  See *Exhibit 24*; *Exhibit 27*.

162.    Further evidence of Nationstar's complete lack of diligence in obtaining missing or incomplete documentation is the fact that at least one of the items they requested, the

"Schedule K-1", had already been addressed by Plaintiff at the time of the secondary request, so it was not even "missing or incomplete" information and/or documentation.

163. Nationstar's actions in failing to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete Plaintiff's loss mitigation applications, specifically, the Second Application, as expressly required by 12 C.F.R. § 1024.41(c)(2)(iv) and 12 C.F.R. § 1024.41(b)(2)(i)(B), constitute a clear, separate, and distinct violation of 12 C.F.R. §1024.41.

164. Nationstar's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

165. As a result of Nationstar's actions, Nationstar is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT FIVE: AGAINST CALIBER

**(Violation of 12 C.F.R. § 1024.41(b) for failure to send written notice within five (5) business days acknowledging receipt of a borrower's loss mitigation application)**

166. Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 88 in their entirety, as if fully rewritten.

167. 12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

168. 12 C.F.R. § 1024.41(b)(2)(i) provides that if a servicer receives a loss mitigation application forty-five (45) days or more before a foreclosure sale, then they shall:

> (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and
>
> (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the

loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (2)(ii) of this section. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

169. Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(b)(3) provides that "[i]f no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale."

170. On or about July 11, 2016, Plaintiff, by and through Ms. Horton of DLF, submitted the Caliber Application via facsimile transmission. See *Exhibit 30*.

171. Caliber was in receipt of the Caliber Application as of July 11, 2016. See *Exhibit 30*.

172. On or about August 10, 2016, Caliber sent two (2) pieces of correspondence seeking additional information necessary to complete the Caliber Application. See *Exhibit 31*.

173. At no point between July 11, 2016 and August 10, 2016 did Caliber send, nor did Plaintiff receive, any correspondence from Caliber acknowledging receipt of the Caliber Application.

174. No foreclosure sale of the Property was scheduled as of July 11, 2016. See *Exhibit 2*.

175.    Pursuant to 12 C.F.R. § 1024.41(b)(2)(i)(B), Caliber, within five (5) days of July 11, 2016, excluding legal public holidays, Saturdays, and Sundays, was to send written notice to Plaintiff acknowledging receipt of the Caliber Application and stating whether Caliber determined that the Caliber Application was complete or incomplete".

176.    Caliber's actions, in failing to send the requisite written notice acknowledging receipt of the Caliber Application to Plaintiff, constitute a clear, separate, and distinct violation of 12 C.F.R. §1024.41(b).

177.    Caliber's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

178.    As a result of Caliber's actions, Caliber is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT SIX: AGAINST CALIBER
## VIOLATION OF 12 C.F.R. §1024.41(g)

**(Violation of prohibition on moving for order of sale with facially complete loss mitigation application pending review)**

179.    Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 88 in their entirety, as if fully rewritten.

180.    12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))"

181.    12 C.F.R. §1024.41(b)(2) provides that if a servicer receives a loss mitigation application forty-five (45) days or more before a foreclosure sale that the servicer must promptly review the application to determine whether the application is complete and notify the borrower

in writing within five (5) days, excluding public holidays, Saturdays, and Sundays, whether the application is complete.

182.    Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(b)(3) provides that "[i]f no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale."

183.    12 C.F.R. §1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to §102[4].41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete".

184.    Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(c)(2)(iv) provides that 12 C.F.R. §1024.41(c)(2)(iv) "requires a servicer to treat a facially complete application as complete for the purposes of paragraphs (f)(2) and (g) until the borrower has been given a reasonable opportunity to complete the application."

185.    12 C.F.R. §1024.41(g) states that if a borrower submits a complete loss mitigation application after the first filing required for any judicial foreclosure process, but more than thirty-seven (37) days before a foreclosure sale, then a *servicer cannot move for foreclosure judgment* or order of sale unless: (1) the servicer has sent written notice pursuant to 12 C.F.R. §1024.41(c)(1)(ii), stating that the borrower is not eligible for any loss mitigation options and the borrower has not requested an appeal, or the borrower's appeal has been denied; (2) the borrower rejects all loss mitigation options offered by the servicer; or, (3) the borrower fails to perform under an agreement on a loss mitigation option.

186.    Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(g) provides that:

> The prohibition on a servicer moving for judgment or order of sale includes making a dispositive motion for foreclosure judgment, such as a motion for default judgment, judgment on the pleadings, or summary judgment, which may directly result in a judgment of foreclosure or order of sale. A servicer that has made any such motion before receiving a complete loss mitigation application has not moved for a foreclosure judgment or order of sale if the servicer takes reasonable steps to avoid a ruling on such motion or issuance of such order prior to completing the procedures required by §1024.41, notwithstanding whether any such action successfully avoids a ruling on a dispositive motion or issuance of an order of sale.

187.    On or about July 11, 2016, Plaintiff, by and through Ms. Horton of DLF, submitted the Caliber Application via facsimile transmission. See *Exhibit 30*.

188.    Caliber was in receipt of the Caliber Application as of July 11, 2016.  See *Exhibit 30*.

189.    On or about August 10, 2016, Caliber sent two (2) pieces of correspondence seeking additional information necessary to complete the Caliber Application.  See *Exhibit 31*.

190.    On or about August 10, 2016, Plaintiff, by and through DLF, submitted all of the information and documentation requested by and through Caliber's correspondence dated August 10, 2016 via facsimile transmission.  See *Exhibit 32*.

191.    As Plaintiff supplied any and all information requested by and through the pieces of correspondence Caliber sent acknowledging receipt of the Caliber Application as of August 10, 2016, the Caliber Application was facially complete, if not wholly complete, as of August 10, 2016. See *Exhibit 30*; *Exhibit 31*; *Exhibit 32*.

192.    No foreclosure sale of the Property was scheduled as of July 11, 2016, or August 10, 2016. See *Exhibit 2*.

34

193.    At no point in time since August 10, 2016, has Caliber sent, nor Plaintiff received, any further correspondence concerning the Caliber Application.

194.    Despite Caliber being in possession of a facially complete or complete application, on or about August 29, 2016, Caliber, by and through LSR, filed a *Precipe for Pluries Order of Sale*.  See *Exhibit 2*.

195.    Pursuant to the *Precipe for Pluries Order of Sale* filed on August 29, 2016, a foreclosure sale of the Property has been scheduled for November 21, 2016.

196.    At no point between July 11, 2016 and August 29, 2016 did: (1) Caliber send notice stating that that Plaintiff was not eligible for any loss mitigation options; (2) Plaintiff reject all loss mitigation options offered by Caliber, as no such options were offered during this period of time; or, (3) Plaintiff fail to perform under an agreement on a loss mitigation option, as no such options were offered during this period of time.

197.    Caliber's actions, in moving for an order of sale while Caliber was in possession of a facially complete or complete loss mitigation application, constitute a clear, separate, and distinct violation of 12 C.F.R. §1024.41(g).

198.    Caliber's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

199.    As a result of Caliber's actions, Caliber is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT SEVEN: VIOLATION OF 12 C.F.R. §1024.41(c)

**(Violation of 12 C.F.R. § 1024.41(c) for failure to perform a review of a borrower's eligibility for any and all loss mitigation options available to a borrower within thirty (30) days of receipt of a complete loss mitigation application)**

200.    Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 88 in their entirety, as if fully rewritten.

201.    12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))"

202.    12 C.F.R. § 1024.41(c)(1) provides that if a servicer receives a complete loss mitigation application more than thirty-seven (37) days prior to a foreclosure sale, then, within thirty (30) days of receiving the complete loss mitigation application, the servicer *must*: (i) Evaluate the borrower for any and all loss mitigation options available to the borrower; and, (ii) provide written notice to the borrower "stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage."

203.    Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(b)(3) provides that "[i]f no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale."

204.    On or about July 11, 2016, Plaintiff, by and through Ms. Horton of DLF, submitted the Caliber Application via facsimile transmission. See *Exhibit 30*.

205.    Caliber was in receipt of the Caliber Application as of July 11, 2016.  See *Exhibit 30*.

206.    On or about August 10, 2016, Caliber sent two (2) pieces of correspondence seeking additional information necessary to complete the Caliber Application.  See *Exhibit 31*.

207.    On or about August 10, 2016, Plaintiff, by and through DLF, submitted all of the information and documentation requested by and through Caliber's correspondence dated August 10, 2016 via facsimile transmission.  See *Exhibit 32*.

208.    As Plaintiff supplied any and all information requested by and through the pieces of correspondence Caliber sent acknowledging receipt of the Caliber Application as of August 10, 2016, the Caliber Application was facially complete, if not wholly complete, as of August 10, 2016. See *Exhibit 30*; *Exhibit 31*; *Exhibit 32*.

209.    No foreclosure sale of the Property was scheduled as of July 11, 2016, or August 10, 2016. See *Exhibit 2*.

210.    At no point in time since August 10, 2016, has Caliber sent, nor Plaintiff received, any further correspondence concerning the Caliber Application. Specifically, Caliber has not sent any correspondence requesting additional, supplement, corrective, or missing information or documentation in regards to the Caliber Application.

211.    As of August 10, 2016, Bennett had submitted any and all documentation requested by Caliber in order to constitute a complete loss mitigation application.

212.    Caliber was in possession of a complete loss mitigation application as of August 10, 2016.

213.    There was no foreclosure sale of the Property scheduled as of August 10, 2016.

214.    Pursuant to 12 C.F.R. § 1024.41(c)(1), Caliber was required, within thirty (30) days of August 10, 2016, to: (i) Evaluate Plaintiff for any and all loss mitigation options

available to Plaintiff; and, (ii) provide written notice to Plaintiff "stating [Caliber's] determination of which loss mitigation options, if any, it will offer to [Plaintiff] on behalf of the owner or assignee of the mortgage."

215.    That is, pursuant to 12 C.F.R. § 1024.41(c)(1), Caliber was required to evaluate Plaintiff for all loss mitigation options available to Plaintiff and send written notice to Plaintiff detailing their determination of Plaintiff's eligibility for such, on or before September 9, 2016

216.    Caliber did not evaluate Plaintiff for all loss mitigation options available to Plaintiff and send written notice to Plaintiff detailing their determination of Plaintiff's eligibility for such, on or before September 9, 2016.

217.    Caliber's failure to review Plaintiff's complete loss mitigation application within thirty (30) days of receipt constitute a clear, separate, and distinct violation of 12 C.F.R. §1024.41(c).

218.    Caliber's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

219.    As a result of Caliber's actions, Caliber is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT EIGHT: AGAINST CALIBER

**(Violation of 12 C.F.R. § 1024.41(b) for failure to exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application)**

220.    Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 88 in their entirety, as if fully rewritten.

221.    12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))"

38

222.    12 C.F.R. § 1024.41(b) provides that "a servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

223.    The CFPB's Official Interpretation of 12 C.F.R. § 1024.41(b)(2)(i)(B) provides that:

> Even if a servicer has informed a borrower that an application is complete (or notified the borrower of specific information necessary to complete an incomplete application), if the servicer determines, in the course of evaluating the loss mitigation application submitted by the borrower, that additional information or a corrected version of a previously submitted document is required, the servicer must promptly request the additional information or corrected document from the borrower pursuant to the reasonable diligence obligation in § 1024.41(b)(1). See § 1024.41(c)(2)(iv) addressing facially complete applications.

224.    Moreover, 12 C.F.R. § 1024.41(c)(2)(iv) provides, in part, that: "[i]f the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application."

225.    If the trier of fact determines that the Caliber Application was not complete, as such term is defined pursuant to 12 C.F.R. § 1024.41(c)(1), then as a theory of alternative liability, it is clear that Caliber failed to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete Plaintiff's loss mitigation applications, specifically, the Second Application.

226.    On or about July 11, 2016, Plaintiff, by and through Ms. Horton of DLF, submitted the Caliber Application via facsimile transmission. See *Exhibit 30*.

227.    Caliber was in receipt of the Caliber Application as of July 11, 2016.  See *Exhibit 30*.

228.    On or about August 10, 2016, Caliber sent two (2) pieces of correspondence seeking additional information necessary to complete the Caliber Application.  See *Exhibit 31*.

229.    On or about August 10, 2016, Plaintiff, by and through DLF, submitted all of the information and documentation requested by and through Caliber's correspondence dated August 10, 2016 via facsimile transmission.  See *Exhibit 32*.

230.    No foreclosure sale of the Property was scheduled as of July 11, 2016, or August 10, 2016. See *Exhibit 2*.

231.    At no point in time since August 10, 2016, has Caliber sent, nor Plaintiff received, any further correspondence concerning the Caliber Application. Specifically, Caliber has not sent any correspondence requesting additional, supplement, corrective, or missing information or documentation in regards to the Caliber Application.

232.    Since the submission of the supplemental documentation requested by Caliber on or about August 10, 2016, more than thirty (30) days have passed without any further correspondence requesting supplemental, corrective, or missing information.

233.    Given the fact that if the Caliber Application was complete on or about August 10, 2016, that Caliber would have been required to review the substance of such application to determine Plaintiff's eligibility for loss mitigation options, it is clear that even the more bare diligence would require that a review of such application for completeness is completed at least some point prior to the thirty (30) day deadline to respond as to eligibility.

234.    That is, a servicer cannot even hope to comply with their obligation to make a determination as to a borrower's eligibility for loss mitigation options if they do not even perform enough of a review of a loss mitigation application so as to determine whether it is complete.

235.    Caliber's actions in failing to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete the Caliber Application, as expressly required by 12 C.F.R. § 1024.41(c)(2)(iv) and 12 C.F.R. § 1024.41(b)(2)(i)(B), constitute a clear, separate, and distinct violation of 12 C.F.R. §1024.41.

236.    Caliber's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

237.    As a result of Caliber's actions, Caliber is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT NINE: AGAINST CALIBER

### [Violation of the FDCPA, 15 U.S.C. §1692k]

238.    Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 88 in their entirety, as if fully rewritten.

239.    Caliber took the actions described, supra, in an attempt to collect a debt represented by the Loan.

240.    Caliber violated 15 U.S.C. §1692(d) by employing an unfair and unconscionable means to collect the subject debt.

241.    Caliber violated 15 U.S.C. §1692(e)(5), by hiring the law firm of LSR and threatening to take an action—move for an order of sale for the Property—that cannot legally be

taken as Plaintiff has submitted a facially complete, if not complete loss mitigation application, which is currently pending review.. See *Exhibit 30*; *Exhibit 31*; *Exhibit 32*; *Exhibit 33*; *Exhibit 34*.

242.     Caliber violated 15 U.S.C. §1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

243.     As pled, *supra*, Plaintiff has been harmed by, and continues to suffer from harm resulting from, the unfair and deceptive practices of Caliber in wrongfully refusing to properly review the Caliber Application and in moving for an order of sale of the Property despite being in possession of a facially complete, if not complete loss mitigation application..

244.     Plaintiff was compelled to retain counsel to send NOE #2, to draft necessary pleading to seek a stay of the foreclosure sale of the Property, and once Plaintiff had exercised all reasonable options at their disposal, to file the instant proceeding.

245.     To date, the potential of a foreclosure sale of the Property remains as a looming threat to Plaintiff as such foreclosure sale remains scheduled for November 21, 2016 and the possibility of scheduling another sale if such sale is postponed or cancelled remains as a looming threat. See *Exhibit 2*.

246.     In addition, Caliber's conduct has caused Plaintiff to suffer great emotional distress driven by the fear that they might lose the Property, their family home, and be forced to leave the Property with their family which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

247.     Caliber's conduct, as pled, *supra*, was outrageous, willful, and wanton, and it showed a reckless disregard for Plaintiff's rights.

## COUNT TEN: AGAINST LSR

### [Violation of the FDCPA, 15 U.S.C. §1692k]

248.    Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 88 in their entirety, as if fully rewritten.

249.    LSR took the actions described hereinabove and specifically, on or about August 29, 2016  filed a *Precipe for Pluries Order of Sale* in an attempt to collect a debt represented by the Loan with full knowledge and notice of the Caliber Application.  See *Exhibit 2*; *Exhibit 30*; *Exhibit 32*.

250.    LSR violated 15 U.S.C. §1692(d) by employing an unfair and unconscionable means to collect the subject debt.

251.    LSR violated 15 U.S.C. §1692(e)(5) when it took an action  - move for an order of sale for the Property—that cannot legally be taken as Plaintiff has submitted a facially complete, if not complete loss mitigation application, which is currently pending review and of which LSR had full knowledge and notice. See *Exhibit 30*; *Exhibit 31*; *Exhibit 32*; *Exhibit 33*; *Exhibit 34*.

252.    LSR violated 15 U.S.C. §1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

253.    LSR violated 15 U.S.C. §1692(d) by employing an unfair and unconscionable means to collect the subject debt.

254.    As pled, *supra*, Plaintiff has been harmed by, and continues to suffer from harm resulting from, the unfair and deceptive practices of LSR in moving for an order of sale of the

Property despite having knowledge and notice of the fact that Caliber was in possession of a facially complete, if not complete loss mitigation application..

255.    Plaintiff was compelled to retain counsel to send NOE #2, to which LSR was also copied, to draft necessary pleading to seek a stay of the foreclosure sale of the Property, and once Plaintiff had exercised all reasonable options at their disposal, to file the instant proceeding.

256.    To date, the potential of a foreclosure sale of the Property remains as a looming threat to Plaintiff as such foreclosure sale remains scheduled for November 21, 2016 and the possibility of scheduling another sale if such sale is postponed or cancelled remains as a looming threat. See *Exhibit 2*.

257.    In addition, LSR's conduct has caused Plaintiff to suffer great emotional distress driven by the fear that they might lose their Property, their family home, and be forced to leave the Property with their family which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the entry of judgment in their favor and against **Nationstar** as follows:

a.  A finding that Nationstar breached 12 C.F.R. §§ 1024.35 and 1024.41 multiple times as alleged in Count One through Count Four;

b.  Awarding Plaintiff statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to each and every violation of Regulation X contained in Count One through Count Four;

c.  Awarding Plaintiff actual damages in an amount to be determined at trial;

    d.   Awarding Plaintiff costs and reasonable attorneys' fees; and,

    e.   For such other and further relief this Court may deem just and proper.

**WHEREFORE**, Plaintiff prays for the entry of judgment in their favor and against **Caliber** as follows:

    a.   A finding that Caliber breached 12 C.F.R. § 1024.41 multiple times as alleged in Count Five through Count Eight;

    b.   Awarding Plaintiff statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to each and every violation of Regulation X contained in Count Five through Count Eight;

    c.   A finding that Caliber violated the FDCPA as alleged in Count Nine;

    d.   Awarding Plaintiff statutory damages in the amount of One Thousand Dollars ($1,000.00) as to Caliber's violation of the FDCPA;

    e.   Awarding Plaintiff actual damages in an amount to be determined at trial;

    f.   Awarding Plaintiff costs and reasonable attorneys' fees; and,

    g.   For such other and further relief this Court may deem just and proper.

**WHEREFORE**, Plaintiff prays for the entry of judgment in their favor and against **LSR** as follows:

    a.   Finding that LSR violated the FDCPA;

    b.   Awarding Plaintiff statutory damages in the amount of One Thousand Dollars ($1,000.00);

    c.   Awarding Plaintiff actual damages in an amount to be determined at trial;

    d.   Awarding Plaintiff costs and reasonable attorneys' fees; and,

45

e.  For such other and further relief this Court may deem just and proper.

Respectfully submitted,

/s/ Marc E. Dann_____
Marc E. Dann (0039425)
Daniel M. Solar (085632)
*Attorneys for Plaintiff*
**THE DANN LAW FIRM CO., LPA**
P.O. Box 6031040
Cleveland, OH  44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Marc E. Dann_____
Marc E. Dann (0039425)
Daniel M. Solar (085632)
*Attorneys for Plaintiff*
**THE DANN LAW FIRM CO., LPA**